The State v. McGonigle.

---

THE STATE, *Appellant,* v. McGONIGLE *et al.*[*]

1. **County Courts:** MINISTERIAL ACTS: OFFICIAL BONDS. County courts in approving official bonds act in a ministerial capacity.

2. ——— : ——— : PAROL EVIDENCE. Parol evidence is competent to show that the court when so acting had knowledge that the name of one of the sureties on a collector's bond had been erased, and that, too, without the knowledge or consent of the other sureties.

3. **Surety:** ALTERATION OF CONTRACT. A surety has the right to stand upon the very terms of his contract, and any material variation or alteration therein will discharge him, unless he consented thereto or subsequently ratified it.

4. ——— : COLLECTOR'S BOND : ERASURE OF NAME OF SURETY. Where a county court accepts a collector's bond with knowledge of the fact that the name of one of the sureties had been erased without the knowledge or consent of other sureties thereon, such bond will not bind the latter. (*State v. Potter,* 63 Mo. 212, *distinguished.*)

5. ——— : ——— : ———. Such bond is void even as against a surety who, without knowledge thereof, signs it after the erasure.

6. ——— : ——— : ——— : ESTOPPEL. Nor are such sureties estopped to deny the binding effect of such bond by reason of their knowledge that the collector after its approval entered upon and performed the duties of the office, it not appearing that they knew of the erasure.

7. **Official Bonds:** SPOLIATION. Spoliation of an instrument is the act of a stranger without the participation of the parties interested.

[*] The cases of McGonigle *v.* The State, Bresnen *v.* The State, Fleming *v.* The State, Cain *v.* The State and Kearnes *v.* The State were affirmed upon the authority of the above-entitled cause.

The State v. McGonigle.

8. ———— : ————. County officials having the custody of bonds are strangers, within the meaning of the rule, so that where such officials deface such bonds their acts are spoliations.

9. ———— : ————. Where, however, the bond is changed by the officials before it is delivered or accepted it is not a case of spoliation.

*Appeal from Knox Circuit Court.*—HON. B. E. TURNER, Judge.

AFFIRMED.

*L. F. Cottey* for appellant.

(1) The record of the county court approving the bond is the only evidence of the fact and of what was done by the county court touching said bond. *Medlin v. Platte County*, 8 Mo. 235; *Milan v. Pemberton*, 12 Mo. 599; *Dennison v. County*, 33 Mo. 168; *Reppy v. Jefferson County*, 47 Mo. 66; *Maupin v. County*, 67 Mo. 327; *Mobley v. Nave*, 67 Mo. 546; *Johnson County v. Wood*, 84 Mo. 515; *Bank v. Hoeber*, 8 Mo. App. 171; *Riley v. Pettis County*, 96 Mo. 318. (2) Taking Dailing's name off the bond was a case of spoliation and not of alteration. *Medlin v. Platte County*, 8 Mo. 235; *State v. Berg*, 50 Ind. 496; *Hill v. Calvert*, 1 Richards (S. C.) 56; 2 Humph. (Tenn.) 242. (3) A bond is valid if delivered to the proper court or officer, although it may not be marked filed, and although there may not be any record of its approval. After it has been thus delivered, it is entirely out of the power of any one to release the bondsmen, by merely erasing their names therefrom. This proposition is clearly affirmed in the following cases: *Jones v. State*, 7 Mo. 82; *James v. Dixon*, 21 Mo. 538; *State v. Farmer*, 54 Mo. 439; *Graves v. McHugh*, 58 Mo. 500; *Brown v. Weatherby*, 71 Mo. 152; *State v. Richardson*, 29 Mo. App. 595. (4) County courts are creatures of the statute, with no powers except what are granted, defined and limited by law,

and every person who deals with the county court is bound to know the law that confers the authority. When Reid presented his bond, the court could only approve or reject it. They had no authority to release a solvent surety, as they say Dailing was. If the county court exceeds its special and limited authority conferred by statute, in such case the county will not be bound by the unauthorized act of the court. *Walcott v. Lawrence County*, 26 Mo. 275; *State ex rel. v. Clark County*, 41 Mo. 49; *State v. Bank*, 45 Mo. 538; *Steins v. Franklin County*, 48 Mo. 177; *State ex rel. v. Hays*, 52 Mo. 579; *Wood v. Williams*, 61 Mo. 63; *Saline County v. Wilson*, 61 Mo. 239. (5) In the case of a note, the consideration passes at the time of the delivery, and cannot afterward be changed, while a bond has a continuing consideration and exists in full force as long as the principal remains in office. An official bond is binding on all who sign it. *United States v. Lynn*, 15 Pet. 290; *Wood v. Williams*, 61 Mo. 63; *Hockaday v. Woods*, 84 Mo. 163; *State v. Powell*, 57 Mo. 395; *LaFayette County v. O'Gorman*, 75 Mo. 370; *Rubelman v. Greve*, 18 Mo. App. 6. (6) The facts in this case create an estoppel against the defendants. They had notice of the record of the approval of the bond by the county court August 4, 1885, and knew that Reid was holding the office by virtue of their suretyship for him. "He who did not speak when he should have spoken shall not be heard, now that he should be silent." *State v. Potter*, 63 Mo. 212; *McKown v. Williams*, 77 Mo. 463; *Lionberger v. Krieger*, 88 Mo. 160; *Wright v. Lang*, 66 Ala. 389; *Burns v. Campbell*, 71 Ala. 271; *Herring v. Skaggs*, 73 Ala. 446; *Evans v. Dougherty*, 84 Ala. 68; *Crown v. Commonwealth*, 4 S. E. Rep. (Va.) 721; *Middleton v. State*, 22 N. E. Rep. (Ind.) 123; *Dair v. United States*, 16 Wall. 1; Bigelow on Estoppel [3 Ed.] 454, and cases there cited; *Butler v. United States*, 21 Wall. 272.

*O. D. Jones*, also, for appellant.

. ( 1 )  The answers do not state facts to constitute a defense.  They do not state the court had notice of the agreements.  They do not state when, by whom or the intent with which Dailing's name was erased.  If an alteration is relied on this must be done.  *Mathews v. Coalter*, 9 Mo. 705–10 ; *McCormick v. Fitzmorris*, 39 Mo. 24–33 ; *Paramore v. Lindsay*, 63 Mo. 63–5 ; *Holten v. Kemp*, 81 Mo. 661–5 ; Lawson on Presumptive Evidence, ch. 17, p. 381, rule 84.  "Alterations, erasures and interlineations appearing on the face of writings, whether under seal or not, are presumed to have been made before their execution or completion."  ( 2 )  In *State v. Potter*, 63 Mo. 212, this court established a doctrine in line with reason and authority.  It is there held the "secret agreement" between the principal and security, who signed on conditions, cannot affect the grantee.  In *State v. Baker*, 64 Mo. 167, the court followed in a case of forgery of the name of security. *State v. Modrel*, 69 Mo. 152 ; *State v. Hewitt*, 72 Mo. 604 ; *Wolf v. Shafer*, 74 Mo. 155.  The theory on which the case was tried, and the finding made in the lower court, was that of a material alteration made before delivery of the bond, and it puts the case and answers all clearly in the rule of *State v. Potter*, 63 Mo. 212, and *Mathews v. Coalter*, 9 Mo. 705.  ( 3 )  It is admitted the bond was delivered, in fact, accepted by the agents of the county in an official way.  Can it be shown that at another time when not acting officially they did acts and were infected with notice which nullifies all officially done?  The record shows affirmatively that, what the members of the county court did in regard to the erasure of Dailing's name, they did as individuals.  It was no notice to them in an official capacity, and does not infect them with notice as agents of the state.  They are the most special of special agents ; "their power

must be strictly construed." *Johnson County v. Wood,* 84 Mo. 489 ; *Maupin v. Franklin County,* 67 Mo. 331 ; *Saline County v. Wilson,* 61 Mo. 239 ; *Medlin v. Platte County,* 8 Mo. 235-8.

*G. R. Balthrope* for respondents McPike and McGonigle.

(1) It was the duty of the county court to see that Reid gave bond before entering upon the duties of his office. R. S. 1879, secs. 6733, 6735, 6738. (2) The evidence clearly and emphatically shows a material alteration and change made in the obligations and responsibilities resting upon these respondents by virtue of the bond, and that the bond by reason of said alteration and changes so made in the light of the following decisions is certainly void as to these respondents. *Martin v. Thomas,* 24 How. 315 ; *Smith v. United States,* 2 Wall. 219 ; *State v. Craig,* 58 Iowa, 238 ; *State v. Churchill,* 3 S. W. Rep. (Ark.) 352 ; *Osburn v. Von Hunter,* 8 N. W. Rep. (Mich.) 77 ; *Brackin County v. Drum,* 80 Ky. 388. (3) If the bond had been delivered and approved before the erasure of Dailing's name then no one would be discharged, not even Dailing. In such case it would have been spoliation and not alteration. *Platte County v. Medlin,* 8 Mo. 232. The bond was not delivered until Reid agreed to pass it from his possession and control, and until the county court agreed to receive it from his possession. Murfree on Official Bonds, sec. 14. (4) The acts and knowledge of the county court are imputable to the state. *Hord v. Taubman,* 79 Mo. 101. (5) The payment to Reid by defendant's securities of the taxes due the state and county by them after alteration of the bond is not a ratification of such alteration, and the doctrine of estoppel will not apply for at the time of such payments they knew nothing of such alterations having been made. *Fredrick v. Railroad,* 82

Mo. 402; *Burk v. Adams*, 80 Mo. 504; *Railroad v. Howard F. B. Co.*, 85 Mo. 307.

*Blair & Marchand* for respondents.

( 1 ) Erasures of names from, and alterations of, notes and official bonds, with or without notice to payee, obligee or agent, will release other sureties thereto. *O'Neal v. Long*, 4 Cranch, 60 ; *Martin v. Thomas*, 24 How. 315 ; *Smith v. United States*, 2 Wall. 219–26; *Medlin v. Platte County*, 8 Mo. 235 ; *Haskell v. Champion*, 30 Mo. 136 ; *Trigg v. Taylor*, 27 Mo. 245 ; *Robinson v. Berryman*, 22 Mo. App. 509–12; *State v. Churchill*, 3 S. W. Rep. ( Ark.) 352 ; *State v. Craig*, 58 Iowa, 238. The case of *State v. Churchill*, above, is directly in point. The case of *Robinson v. Berryman*, above, also, has an important bearing on the case. ( 2 ) The law in regard to erasing names from and making alterations in instruments and official bonds applies to individuals, counties, states and government of the United States alike. *Ayres v. Milroy*, 53 Mo. 516 ; *State to use v. Potter*, 63 Mo. 212–18. ( 3 ) There is no place for the doctrine of spoliation in this case as the name was erased before the bond was approved or accepted. *Brown v. Weatherby*, 71 Mo. 152 ; *Bensley v. Haeberle*, 20 Mo. App. 648 ; 12 Wheat. 64; 14 Mass. 167. ( 4 ) The doctrine that laches is not imputable to the state cannot be invoked in this case because the state has fully protected itself by the bond taken by it from the state auditor ( R. S. 1879, secs. 7553–4 ), and of this law this court will take judicial notice. *State v. Case*, 53 Mo. 246 ; *State v. Gates*, 67 Mo. 139 ; *O'Brien v. Railroad*, 21 Mo. App. 12. ( 5 ) The loss was occasioned by the negligence of Walker and the insolvency of Reid, and the sureties are discharged. *People v. Janson*, 7 Johns. 332 ; *State v. Roberts*, 68 Mo. 234 ; *Dox v. Post*, 1 Pet. 318. ( 6 ) Injunction and *mandamus* will lie against public officers of the states and

United States possessing ministerial duties exclusively. *Marbury v. Madison*, 1 Cr. 137; *Kendall v. Stockton*, 12 Pet. 527; *State v. Johnson*, 4 Wall. 475; *Ratterman v. Tel. Co.*, 127 U. S. 411; *People v. Canal*, 55 N. Y. 390; *State v. Secretary of State*, 33 Mo. 293; *Francis v. Blair*, 89 Mo. 291; *Neiser v. Thomas*, 12 S. W. Rep. 725. (7) Injunction will lie to restrain and prevent the collection of illegal and void taxes and process issued to enforce void judgments. *Railroad v. Apperson*, 97 Mo. 300; *Valle v. Zeigler*, 84 Mo. 214; *Ewing v. Board*, 72 Mo. 436.

BLACK, J.—The state, as plaintiff, brought this suit against the sureties on the official bond of Peter J. Reid, who was elected collector of Knox county in November, 1884. Reid seems to have paid over the county revenues collected by him, but he made default to the state in the amount of fourteen thousand and ninety-two dollars, and hence this suit. The case was tried by the court without a jury, the trial resulting in a judgment for the defendants, to reverse which the state prosecutes this appeal.

Many matters of defense were set up in the answers filed by the defendants, and evidence was received in support of them; but the court, at the close of the trial, excluded the evidence bearing upon these defenses, except that offered in support of that part of the answer which, in effect, states that the bond sued upon is not the obligation of the defendants. This is, therefore, the only defense before us on this appeal.

In August, 1885, Reid presented to the county court of Knox county a bond in the penal sum of thirty thousand dollars for approval, signed by himself and the following sureties, in the following order: P. H. Early, Patrick Fleming, I. D. McPike, Thomas Bresnen, George Dailing and Thomas Kearnes. At the same time, Dailing, one of the sureties, appeared before the

court, which was then in session, and asked that his name be taken off the bond, assigning as a reason therefor, that he signed upon the understanding that James Kelly would also sign, and that Kelly's name had not been procured. The matter was talked over in the presence of the court, and the name of Dailing was erased by the clerk, in the presence of all the judges, and of Dailing and of Reid, but in the absence of, and without the knowledge or consent of, any of the other sureties. Some of the evidence is to the effect that the erasure was made by the clerk, at the instance of the court, the other parties present consenting. The presiding justice then told Reid he must procure other sureties. Thereupon, Reid took the bond, and, in one or two days, again presented it to the court with the name of John Cain signed on the line, and at the place, from which Dailing's name had been erased. The court then approved the bond by an order dated the fourth of August, 1885. Cain, who signed by making his mark, did not know that Dailing had ever been a party to the instrument. The other sureties signed at different dates, and at the office of Reid. Nothing is said about any erasure in the body of the bond, and the inference is that the names of the sureties had not been inserted at that place when the bond was first presented for approval. Dailing was a substantial property-owner, while Cain appears to have been in debt to the amount of the full value of all of his property.

The defendants asked no instructions. The state asked one only on this branch of the case, to the effect that the evidence concerning the erasure of the name of Dailing constituted no defense, which the court refused. The plaintiff is, therefore, here standing on a demurrer to the evidence of the defendants.

1. The state places much reliance upon the proposition that the circuit court should have excluded all of the parol evidence of what was said and done in the

presence of the judges of the county court. This contention is based upon the ground that the acts of the county court can be shown alone by the record. These courts are required to keep a just and faithful record of their proceedings, and must speak by, and through, the record. The county courts, however, in approving these official bonds, act in a ministerial, and not a judicial, capacity. 41 Mo. 221, 248; 45 Mo. 55. They are made the agents of the state and counties for the purpose of accepting such bonds. The parol evidence was not offered in this case for the purpose of showing any order or judgment of the court, but for the purpose of showing that the court had full notice and knowledge of the fact that the name of one of the sureties had been erased, and that, too, without the knowledge or consent of the other sureties. For this purpose, the evidence was properly received. Notice to the court, when thus acting in a ministerial capacity, may be shown by evidence which would be sufficient in case of other agents. It is not to be expected that all the information which the court may have while transacting such business will be spread upon the record. The law does not require it.

2. The plaintiff cites, and with confidence relies upon, a line of authorities, of which *State to use v. Potter*, 63 Mo. 212, is the leading one in this court. That was a suit on a bond of Turley, as guardian of certain minors, with Potter and another as sureties. Potter's defense was that he signed the bond on the condition that it would be signed by one Bothrick, as surety, and that it was filed by Turley without having procured the signature of Bothrick. Says the court: "Here the surety who defends this action had invested the principal with an apparent authority to deliver the bond; and there was nothing on the face of the bond, or in any of the attending circumstances, to apprise the official who accepted it that there was any

secret agreement which should preclude the acceptance of the bond." The defense was accordingly overruled, and the doctrine of that case, overruling former cases, has been followed in subsequent cases. 64 Mo. 167 ; 69 Mo. 152 ; 72 Mo. 604 ; 74 Mo. 154. It is now well-established law in this and other jurisdictions that where a surety signs a bond and leaves it in the hands of the principal, to be delivered only upon the condition that it is signed by another person, and the principal delivers the bond to the obligee without complying with the condition, and the obligee takes it without notice of the conditional agreement, the surety will be bound. *Dair v. United States*, 16 Wall. 1 ; *State v. Peck*, 53 Me. 284 ; *Taylor County v. King*, 73 Iowa, 153 ; *State ex rel. v. Pepper*, 31 Ind. 76 ; *Millett v. Parker*, 2 Met. (Ky.) 608. The same rule applies where the surety signs a bond, leaving a blank space for the penalty, and the principal fills it with a larger amount than that agreed upon by the principal surety. *Butler v. United States*, 21 Wall. 274. In these cases of conditional agreements, it is the surety who puts trust and confidence in the principal, and not the obligee ; and if any one is to be the loser it should be the surety, for he puts it in the power of the principal to create the mischief complained of. The bond having been accepted and acted upon, the surety is estopped from setting up an unperformed and undisclosed condition. The cases before cited all proceed upon the ground that there is nothing upon the face of the bond, as disclosed by the attending circumstances, to apprise the obligee, or accepting officer, of a state of facts which should prevent its acceptance.

When the county court accepted the bond in question, it had full knowledge of the fact that the name of Dailing, as one of the sureties, had been erased, and the name of Cain substituted therefor. The circumstances all tend to show that the court knew this had been done without the knowledge or consent of the other sureties.

The court was in no manner misled or deceived, and there is no room or ground for the application of any principle of estoppel as against the sureties. The cases before cited, and the principles of law upon which they are ruled, do not meet the question which we are bound to decide in this case.

3. The surety has the right to stand upon the very terms of his contract ; and it is well-settled law that any material variation or alteration in the obligation or contract upon which he is bound will discharge him, unless he consents to the alteration before made, or by some subsequent act ratifies it. Burge on Suretyship, 214 ; Baylies on Sureties & Guarantors, 260. The principle of law just stated is not controverted by the plaintiff, but its application to the case in hand is denied. It is therefore deemed best to make a concise statement of the facts of some of the cases relied upon by the defendants. *Martin v. Thomas*, 24 Howard, 315, was a suit upon a delivery bond executed to a marshal in a replevin suit. After the bond had been executed by the principal and three sureties, the principal, with the consent of the marshal and without the consent of the sureties, erased his name. This erasure, it was held, constituted a variation of the contract of the sureties, and discharged them from all liability on the bond.

*Smith v. United States*, 2 Wall. 219, was a suit upon a bond given by Pine as marshal, the bond having been approved by the district judge. Smith, one of the sureties, defended on the ground that the bond was not his deed. . The evidence showed that Smith, Hoyne and others had signed the bond as cosecurities for Pine. Hoyne became dissatisfied and requested Pine to erase his name, which was done, but by whom did not appear. The name of Hoyne was erased when the bond was presented to the judge for approval, and the judge had been told by Hoyne that he wanted his name erased. The remaining sureties, except Smith, appeared before

the judge and acknowledged the execution of the bond. Smith did not acknowledge it and did not know that Hoyne's name had been erased. It was held that the sureties who acknowledged the bond after the erasure were estopped from interposing the alteration as a defense ; but, as to Smith, it was held that the erasure was a material alteration of the obligation to which he became a party, and that he was, therefore, discharged.

The suit in *State v. Craig*, 58 Iowa, 238, was upon the bond of the warden of the penitentiary. There were some eleven sureties as the bond stood when produced in evidence, and the defense was material alteration. The evidence showed that one Smith signed it as a surety after the first seven signatures had been obtained, and the other sureties signed after Smith. Before the names of the sureties had been inserted in the body of the bond, and before approval, Smith's name was erased without the consent of any of the other sureties ; the person signing before Smith did not know that he had signed until after the suit had been commenced. It was held that though Craig, the principal, had been intrusted with the bond to procure signatures and present it for approval, yet, as to the sureties signing subsequent to Smith, Craig was not authorized to deliver the bond after it had been altered to their prejudice, and that those sureties were discharged because the instrument sued upon was not their contract. The sureties who signed before Smith were also discharged on the ground that it would be presumed that they signed with the understanding that other sureties would be procured in such a way that all would be held and bound as cosureties.

In the case of *Bracken County Commissioners v. Drum*, 80 Ky. 388, the suit was based upon a sheriff's bond, and the defense was *non est factum*. Ten persons signed a power of attorney authorizing the county clerk to sign their names to the bond. At least two of the

The State v. McGonigle.

names were erased before the power of attorney was delivered to the clerk. It was held that, if the names were erased without the knowledge or consent of the other sureties and with the knowledge or by the direction of the county judge, whose duty it was to take and approve the bond, then the plaintiff could not recover. The court said, in substance, that it was the duty of officers, intrusted with authority to take and approve official bonds, to use ordinary care and prudence to protect the sureties as well as to protect the public.

Here the bond, when first presented to the county court for its approval, was a completed bond. As then presented, it expressed the contract of the sureties. They agreed to be jointly and severally bound, but they did not agree that the name of Cain should be substituted for that of Dailing. The alteration in the obligation was a material one, and was made in the presence of the county court and without the knowledge or consent of the sureties, and the bond, as approved, is not the obligation of the defendants. The authorities cited are in point, and all lead to the conclusion just stated. Some of them, and others which we have not cited, go further in favor of the discharge of sureties than we are disposed to go. If the name of Dailing had been erased and that of Cain substituted without the knowledge of the county court, then we have no hesitancy in saying that the sureties should not be discharged, because, by intrusting the bond to Reid, they put it in his power to mislead and deceive the court, and they should suffer the consequences. Here the court was not misled, but accepted the bond, knowing that it had been altered without the knowledge or consent of the other sureties. Under these circumstances the court had no right to disregard the rights of the other sureties.

The argument is made that when these sureties signed the bond and left it with Reid, the principal, to procure other signatures and present it to the county

court, they thereby made him their agent and are bound by his acts. It is to be remembered that the county court had full knowledge of all of the facts, so that the argument, to have any bearing upon this case, must go to the extent of saying that Reid had invested in him the right to discharge at pleasure any one or more of the persons who became parties to the bond. That, for this purpose, he could of right represent the sureties as well as himself. This is carrying the doctrine of implied powers entirely too far. Each of the sureties when signing the bond and leaving it with Reid did, doubtless, make him their agent for the purpose of procuring other sureties and for the purpose of presenting the bond for acceptance and approval. But it cannot be said they thereby gave him authority to discharge any one who had or might thereafter become a party to the obligation. As said in *State v. Craig, supra,* the principal was not authorized to deliver the instrument after it had been altered to the prejudice of the sureties. Nor does the fact that the sureties knew the bond had to be approved furnish any ground for the inference that they authorized the alteration. *Smith v. United States, supra.*

It is true the defendant Cain signed the bond after the alteration had been made, but the evidence is to the effect that he was wholly ignorant of the fact that Dailing had ever been a party to the bond. As to him, the bond is void because he signed it upon the supposition that the other parties were in fact cosureties, and he never undertook to become the sole surety. *Howe v. Peabody,* 2 Gray, 556. But it is further argued that the erasure of Dailing's name was spoliation only, and did not affect the liability of any one on the bond. If the bond had been delivered, and the erasure thereafter made by county officials, then *Medlin v. Platte County,* 8 Mo. 235, would be an authority for the position thus taken by plaintiff. It is in effect said in that case that the term alteration is usually applied to the

act of a party entitled under the instrument and imports an improper design, but spoliation is the act of a stranger without the participation of a party interested. It is also held that county officials, who have the custody of instruments in writing, are strangers within the meaning of the rule, so that if these officials deface such instruments their acts are but spoliation. To the same effect is *State ex rel. v. Berg*, 50 Ind. 496. Here, there never was a time when the state or county held Dailing as a surety ; for the evidence is all to the effect that his name was erased before the bond was delivered or accepted. The question in this case is, whether the bond sued upon is the deed of the sureties, and we do not see that the doctrine of spoliation has anything to do with this controversy.

4. The plaintiff insists that the court erred in refusing an instruction, to the effect that if the bond was approved by the court on the fourth of August, 1885, and the defendants knew that Reid occupied the office of collector, and collected the revenues for the years 1885 and 1886, and made no objection thereto, then they are estopped from making the defense that the bond was altered by the erasure of Dailing's name.

There is an abundance of evidence tending to establish all facts stated in this refused instruction, but there is not a word of evidence tending to show that the defendants during this time knew that Dailing's name had been erased. The only evidence to which our attention is called is that they knew nothing about the erasure. An estoppel cannot arise until it is shown that they knew of the alteration and thereafter made no objection to the performance by Reid of official duties by virtue of having given the bond in question. No such state of facts is shown or hypothetically stated in the instruction, and it was, therefore, properly refused.

It is useless to notice the other minor suggestions made by the plaintiff. They do not meet the real and

only question in this case.   The case has been twice argued and we can come to no other conclusion than that before indicated.   We have endeavored to lay it down as the better law, that sureties on these official bonds ought not to be discharged until they show knowledge, on the part of the accepting officers, of a state of facts which should have precluded the acceptance of the bond, be it a conditional contract between principal and surety, or an alteration of the bond as executed by the surety.   That has been done in this case.  Common information, without any special knowledge of the law, ought to have told these county judges that it was an improper thing to strike off the name of one of the sureties without the consent of the other sureties.

The judgment is affirmed.   SHERWOOD and BARCLAY, JJ., dissent ; the other judges concur.